UNION AGRICULTURAL SOCIETY V. GAMBLE ET AL.

1. **Corporation:** ABANDONMENT OF. Facts considered which were held to constitute an abandonment of the corporate organization of an agricultural society by its stockholders, and to show that the institution of a suit in its name was without authority.

*Appeal from Clinton Circuit Court.*

MONDAY, DECEMBER 8.

THE Union Agricultural Society was the owner of a tract of land near Wheatland, Clinton County, Iowa. It executed a mortgage thereon to secure the payment of a certain sum of money. The mortgage was foreclosed, and the defendants became the purchasers of the land at the foreclosure sale for an amount largely in excess of what was necessary to pay off the mortgage, interest and costs. The sale was made without redemption. The defendant Gamble was at the time the treasurer of said society.

This action was brought to set aside the conveyance made by the sheriff to the defendants, upon the alleged ground that the same was fraudulent as against the society, and for a decree quieting the title in the plaintiff, and praying that an account be taken between the plaintiff and defendants, and that upon such accounting the defendants be required to pay to plaintiffs such balance as may be found to be due.

There was an answer which fully controverted the allegations of the petition, and upon a trial the petition was dismissed. Plaintiff appeals.

*J. Stine* and *J. A. Flint*, for appellant.

*A. J. Leffingwell* and *A. R. Cotton*, for appellees.

ROTHROCK, J.—The first question to be determined, and, indeed, the question which it seems to us is decisive of this case, is, was the suit authorized to be brought by the plaintiff? The point is fairly made in the pleadings and in the arguments of

counsel. To determine it, so that our conclusion may be fairly understood by the reader, it is necessary that we should give somewhat of a history of the organization and proceedings of the society.

At the organization, what was called a constitution was adopted. Section one provided that: "The society shall be composed of such citizens as shall signify their wish to become members thereof, by recording their names and paying the sum of one dollar into the treasury, and one dollar annually thereafter." Afterward this section was amended by adding thereto these words: "And any person may become a life member by paying into the treasury the sum of ten dollars." On the 14th day of January, 1871, at an adjourned special meeting of the society the following resolution was adopted:

"*Resolved*, That section one of the constitution be repealed, and there be enacted in lieu thereof the following:

"Sec. 1. The society shall consist of such persons as will pay the sum of ten dollars into the treasury, which shall constitute a life membership, which shall be negotiable by transfer upon the books of the secretary."

The sheriff's sale upon the mortgage foreclosure was had on the 22d day of July, 1871. The defendants were the purchasers at the sale. The amount for which the property was sold was $1,560. The amount necessary to discharge the mortgage was about $569, leaving a balance due the society of about $980. This amount was not paid, and the defendant Gamble executed a receipt therefor to the sheriff. The effect of this transaction was that the defendant Gamble was chargeable as treasurer for the amount of such balance.

On the 18th day of August, 1871, there was a meeting of the society; at that time there were, in all, twenty life members; fourteen of these were present at the meeting. The record of the society shows that the following proceedings were had: "President then stated the object of the meeting, the grounds and property belonging to the society having been sold without redemption on a mortgage held by Mr. Kock of Davenport, and purchased by C. G. Rogers and Thos. Gamble, and they were having a deed for the same on record, in the re-

corder's office of Clinton County, was to take into considera-
tion the disposition to be made of the effects of the society."

Thos. D. Gamble stated to the meeting that C. G. Rogers
and himself had attended the sale of the property, and pur-
chased the same for the sum of $1,560, that the amount of the
mortgage with the interest and costs amounted to $569.70.
Messrs. Gamble & Rogers made the following proposition.

" 1. That for the amount of one hundred dollars (amount of
their expenses attending sale of property), and amount paid by
them for the property, they would deed back to the society
the property which they purchased.

" 2. That they would give the sum of twenty-five dollars for
life membership tickets, the same to be transferred to them
on the books of the secretary.

" Whereupon the following persons transferred their right
and title to life membership tickets to C. G. Rogers and Thos.
D. Gamble."

Here follows a list of thirteen life members, including the
name of the president of the society. Afterward all of the
life members excepting J. Stine assigned their membership
tickets to Gamble & Rogers, each life member receiving from
the defendants twenty-five dollars for his membership ticket.
There were some other debts of the society which Gamble &
Rogers afterwards paid. Every life member who sold his
membership must have understood that the transaction was a
virtual abandonment of the organization, and a distribution of
its assets among the life members.

It is contended by appellant that the amendment to the
constitution excluding all but life members was not made at
the annual meeting as provided in the constitution. Admit this
to be correct, and yet it cannot be denied that the life members
were legitimate members of the society as well as the annual
or dollar members, and there is no evidence that there were
any annual members at the time this action was had. One
dollar entitled a person to membership for one year from the
time he paid the same into the treasury, and the only evidence
we have upon the subject shows that the last dollar member-
ships were sold in 1868. It follows, then, that this society con-

sisted of twenty life members, and nineteen of that number in 1871 transferred their membership tickets to the defendants, in pursuance of the action of a meeting of the society called for the purpose of taking into consideration the disposition of the effects of the society. There has never been a meeting of the society since that time; no officers have been·elected, and the only member who is not estopped, by the transfer of his membership, from questioning the ratification of the purchase of the property by the defendants, is Jesse Stine. This being the situation of the parties it may well be inquired who authorized the commencement of this suit? That it was authorized by any act of the society, as such, is not claimed. The defendants by their purchase of the membership tickets represent nineteen-twentieths of the society, so to speak, and Stine one-twentieth. So long as those who assigned their membership tickets take no action to repudiate the settlement made by them, upon the ground of fraud or otherwise, no other person can make complaint for them, nor institute suits in their behalf in the name of the society. It must be conceded that all of the life members but one, with a full knowledge of all the facts, took twenty-five dollars as their share of the proceeds of the sale of the property and are content, and that as members and officers of the society they understood and intended that the ratification of the sale thus made was an end of the society as an organized body. That Stine, who was a life member and was not present at the meeting, and has not entered into the arrangement for the disposition of the effects of the society, was not bound by the action of the other members, may be conceded. Whether he could have maintained an action in his own name against the defendants for his share of the property of the society need not be determined in this action. And whether the society was dissolved, and at an end for all purposes when the sale of the property to the defendants was ratified, and the membership tickets were assigned to defendants, we need not determine. It is enough that we find, as we do, that the society did not authorize this suit to be brought.

Having determined the case upon the single ground that there was no authority to institute the action, it is unnecessary

to determine whether the defendants fraudulently combined to purchase the property. Indeed if we were required to determine that question it would seem to be quite immaterial what their previous conduct had been, when it appears that they made a true statement of their purchase to the meeting of the society, and ' offered to convey the land to the society upon payment of the mortgage, and their expenses.`

AFFIRMED.